**The relief described hereinbelow is SO ORDERED.**

**SIGNED this 29th day of December, 2014.**



_____
Robert D. Berger
United States Bankruptcy Judge
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In re:

**JAMES DOMINIC WALLER,**                                                                 Case No. 14-20200-13
      **Debtor.**                                                                                         Chapter 13
_____

**JAMES DOMINIC WALLER,**
      **Plaintiff,**

      v.                                                                                  Adv. Pro. No. 14-06023

**ERICKA CORRADO WALLER, et al.,**
      **Defendants.**

**MEMORANDUM OPINION AND ORDER ON PLAINTIFF'S COMPLAINT**

     Comes on for hearing Plaintiff's complaint to determine the dischargeability of certain debts.[1] This is an adversary proceeding in which Debtor-Plaintiff James D. Waller (James) seeks

_____

[1] Debtor-Plaintiff James D. Waller appears by his attorney, Jonathan C. Becker, Lawrence, KS; Defendant Ericka C. Waller appears by her attorney, John R. Hooge, Lawrence,

a determination of whether maintenance and attorney's fees and costs[2] awarded to his former spouse, Defendant Ericka C. Waller (Ericka), are a domestic support obligation (DSO) under 11 U.S.C.§ 101(14A) that are excepted from discharge under 11 U.S.C. §§ 523(a)(5) and 1328(a)(2); or whether that award is a property or debt division under 11 U.S.C. § 523(a)(15) and dischargeable under 11 U.S.C. §1328(a)(2) in James's chapter 13 bankruptcy case.[3]

The parties stipulated to orders, memorandum orders, decisions and journal entries issued by the Douglas County, Kansas, District Court (Divorce Court) in the case captioned, *In the Matter of the Marriage of Ericka C. Waller and James D. Waller*, Case No. 2010-DM-870, and the Memorandum Opinion issued by the Kansas Court of Appeals in the case captioned, *Erika (a/k/a Ericka) C. Waller v. James D. Waller*, No. 108,151 (Kan. Ct. App. June 14, 2013).[4] James, Ericka, and the Douglas County District Court Trustee submitted briefs and the Court took the matter under advisement on September 2, 2014.[5]

This Court has jurisdiction under 28 U.S.C. §§ 157 and 1334 to decide the matter in

---

KS; Douglas County Court Trustee appears by John C. Giele, Assistant Douglas County District Court Trustee, Lawrence, KS.

[2] Although the dischargeability of the attorney's fees and costs were not pled in Plaintiff's complaint, the parties have proceeded to brief the issue. This evidences consent to the Court's adjudication of the issue and the Court proceeds accordingly.

[3] All future statutory references are to the Bankruptcy Code (Code), as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 11 U.S.C. §§ 101–1532, unless otherwise specifically noted.

[4] Doc. 19.

[5] Doc. 21, 22, and 23.

controversy.⁶  This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I).  The pleadings do not contest the core nature of this proceeding.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTS

James and Ericka were married on September 25, 1999, and divorced on October 17, 2011.  James and Ericka have one minor child who resides with Ericka.  James also has two children from a previous marriage, who are now adults, whom Ericka adopted.  Ericka ran the household and stayed home with the children during most of the marriage while James traveled on business.  During the marriage, James received income from StagePro, Inc., StagePro Mobile, LLC, and Apex, Inc.  In January 2010, James owned 100 percent of StagePro, Inc., 100 percent of StagePro Mobile, and 33 percent of Apex, Inc.  As of October 17, 2011, total gross receipts for James's businesses were approximately $1,500,000 to $2,000,000 annually.  However, the Divorce Court experienced difficulty pinning down James's exact income.  During the pendency of James and Ericka's divorce, James was uncooperative and flaunted the Divorce Court's rules in an apparent attempt to conceal his true income.⁷

---

⁶ The United States District Court for the District of Kansas refers all cases and proceedings in, under, or related to Title 11 to the District's bankruptcy judges pursuant to the Amended Standing Order of Reference, effective June 24, 2013, referenced in D. Kan. Rule 83.8.5.

⁷ The Divorce Court noted that James "never provided copies of many financial records to [Ericka] or to the Court.  Moreover, he refused to provide some of the partial records that he ultimately provided without a court order. [James] appeared at each court hearing . . . with more records than previously produced, even though he still fell short of reasonable requests and pleaded shoddy bookkeeping."  Doc. 19-3, at 9.

14.12.29 Waller Order Granting Priority Status of DSO Claim.wpd

Ericka works two jobs, earning a combined current annual salary of $27,300. During the marriage, Ericka earned $24,000 annually through James's companies for undisclosed work.

The Divorce Court granted the parties' divorce under its written memorandum and decision (Divorce Decree).[8] The Divorce Decree ordered child support, maintenance, property and debt distribution, and attorney's fees. The Divorce Decree ordered James to pay $597 per month in child support, and beginning December 8, 2010, maintenance of $1,000 per month for 60 months (Maintenance).[9] The Divorce Court later adjusted the Maintenance from 60 months to 55 months, allowing for a temporary maintenance credit.[10] Maintenance payments terminate upon the death of either party, Ericka's remarriage, or her cohabitation in a marriage-like relationship with an adult. The Divorce Court allocated to James a majority of the marital assets and all of the marital debts. The following was assigned to James: (a) the marital home ($265,000); (b) James's business interests ($2,409,126); (c) two time shares ($24,333); (d) a recreational vehicle ($100,000); (e) a Volkswagen Jetta ($2,325); (f) the marital home mortgage ($186,000); (g) credit card debt ($37,861); (h) a mortgage on business real estate ($435,887); (i) the People's Bank business loan ($654,682); (j) the Daimler business loan ($105,256); (k) the Bank of America business loan ($486,479); (l) tax debt ($163,986); and (m) business credit card

---

[8] Doc. 19-3.

[9] Doc. 19-3, ¶ 12–13, at 8.

[10] Doc. 19-4.

debt ($109,185).[11]  James ended up with a net value of the marital estate worth $621,448.53.[12]  The following was assigned to Ericka: (a) one time share ($12,167); (b) a Volkswagen Beetle ($4,150); and (c) a boat and trailer ($7,000).  This left Ericka with a net value of the marital estate worth $23,317, a difference of $598,132 compared to James.  The Divorce Court ordered James to pay attorney's fees of $3,300.00 and bank fees of $950.00 to Ericka because James failed to cooperate in discovery.[13]

James filed a chapter 13 petition on January 30, 2014.[14]  On February 24, 2014, James filed a complaint seeking a determination as to whether the Maintenance and attorney's fees and costs are a DSO under § 101(14A) and excepted from discharge pursuant to §§ 523(a)(5) and 1328(a)(2); or whether the Maintenance and attorney's fees and costs are a property or debt division under § 523(a)(15) and dischargeable under § 1328(a).[15]  On March 25, 2014, the Douglas County District Court Trustee filed an answer asserting that the Maintenance is a DSO

---

[11] *Erika (a/k/a Ericka) C. Waller v. James D. Waller*, No. 108,151 (Kan. Ct. App. June 14, 2013) (Doc. 19-8 at 5–6 showing the breakdown of the Divorce Court's property award).

[12] Doc. 19-8, at 5–6.  The Divorce Court assigned assets with a gross value of $2,800,784.33 to James.  Those assets were encumbered by business debt of $1,955,475.05.  The Divorce Court also assigned nonbusiness debt of $223,860.75 to James—bringing James's total debt balance to $2,179,335.80.  Thus, the net value of the assets assigned to James after considering the assigned debt was $621,448.53.

[13] Doc. 19-3, at 9.

[14] Doc. 1, James Waller's Main Bankr. Case No. 14-20200-13.

[15] Doc. 6.  As noted (*supra* note 2), the dischargeability of the attorney's fees and costs was not raised in the complaint, but was briefed by the parties.

under § 101(14A) and nondischargeable pursuant to § 523(a)(5).[16] On March 25, 2014, Ericka filed an answer requesting the Maintenance be determined a DSO and James be denied any and all relief.[17] On June 16, 2014, James, Ericka, and the Douglas County District Court Trustee filed stipulated exhibits in this adversary proceeding.[18] On August 1, 2014, Ericka filed a memorandum requesting the Court review the Divorce Court's memorandum that ordered the Maintenance.[19] On August 4, 2014, the Douglas County District Court Trustee filed a brief in opposition to James's request to discharge the Maintenance.[20] On August 29, 2014, James filed a reply brief in response to the Douglas County District Court Trustee and Ericka that requested a determination that the Maintenance is not a DSO.[21]

## LAW

Under § 1328(a), a debtor is generally entitled to discharge after completion of his

---

[16] Doc. 15. The Douglas County District Court Trustee has the statutory duty to enforce and administer collection activities. K.S.A. § 20-378 (giving the court trustee the responsibility for collection of support); K.S.A. § 20-379 (delineating the court trustee's powers).

[17] Doc. 16.

[18] Doc. 19–19-8. The exhibits included: (a) Temporary Order of Custody, Parenting Time, Child Support, Maintenance, Reinstatement of Health Insurance; (b) Order on Petitioner's Motion to Compel Discovery; (c) Memorandum Decision; (d) Order Denying Motion to Reconsider in Part and Amending Journal Entry; (e) Memorandum Decision; (f) Agreed Journal Entry of Judgment in Contempt and Purge Review Order; (g) Order Modifying Purge Review Order; (h) Memorandum Opinion of the Kansas Court of Appeals, *Erika (a/k/a Ericka) C. Waller v. James D. Waller*, No. 108, 151 (Kan. Ct. App. June 14, 2013).

[19] Doc. 21.

[20] Doc. 22.

[21] Doc. 23.

chapter 13 plan. However, § 1328(a) specifies that certain debts cannot be discharged. A DSO is such a debt; in bankruptcy parlance a DSO is also referred to as a debt that is in the nature of support. A DSO is treated as a first priority claim under § 507(a)(1) and, with limited exception, must be paid in full during a chapter 13 plan's duration under § 1322(a)(2).

Sections 523(a)(5) and 101(14A) control the Court's determination with regard to dischargeability of the Maintenance. Section 523(a)(5) "departs from the general policy of absolution, or 'fresh start'" to "enforce an overriding public policy favoring the enforcement of familial obligations."[22] In § 523(a)(5), Congress provided the non-filing former spouse the opportunity to breach certain bankruptcy protections and render some or all of the debtor's obligations to a former spouse nondischargeable.[23] Section 523(a)(5) creates tension between the interests of the debtor under the Code and the obligations to former spouses arising in family law proceedings. Something must give when state family law and federal bankruptcy law collide. Frequently, at least one party is unsatisfied with the outcome of the bankruptcy proceedings.

**Analysis**

This Court is not bound by the labels applied by the Divorce Court when reviewing the

---

[22] *See In re Trump*, 309 B.R. 585, 591 (Bankr. D. Kan. 2004); *In re Sampson*, 997 F.2d 717, 721 (10th Cir. 1993), citing and quoting *Shaver v. Shaver*, 736 F.2d 1314, 1315–16 (9th Cir. 1984); HENRY J. SOMMER & MARGARET DEE MCGARITY, COLLIER FAMILY LAW AND THE BANKRUPTCY CODE ¶ 6.03[1], at 6-13 to 6-17 (2014); 4 COLLIER ON BANKRUPTCY ¶ 523.05, at 523-1 (ALAN N. RESNICK AND HENRY J. SOMMER, eds. 16th ed. 2014).

[23] This case is procedurally somewhat unusual in that the debtor, not the former spouse creditor, filed the adversary action.

dischargeability of James's obligations to Ericka.[24] The treatment of James's obligations to Ericka under Kansas law does not bind the Court's inquiry. "[N]either state law nor the parties' characterization determine[] whether a debt [is] nondischargeable under section 523(a)(5)."[25] Whether James's obligations to Ericka are excepted from discharge under § 523(a)(5) is a matter of federal law based on an inquiry made on a case-by-case basis.[26]

This Court's inquiry into the "actual nature of the obligation promotes nationwide uniformity of treatment between similarly situated debtors and furthers § 523(a)(5)'s underlying policy favoring enforcement of familial support obligations over a debtor's 'fresh start.'"[27] The court in *Sampson* concluded that whether an obligation is excepted from discharge under § 523(a)(5) is "a dual inquiry into both the parties' intent and the substance of the obligation," and the crucial issue is "whether the obligation imposed by the divorce court has the purpose *and effect of providing support for the spouse.*"[28] The term "support" receives broad interpretation

---

[24] *In re Rivet*, No. 13-11726, 2014 WL 1876285, at *3 (Bankr. D. Kan. May 8, 2014) (Bankruptcy court is not bound by labels applied to matrimonial obligations in a state court decree).

[25] *In re Sampson*, 997 F.2d at 722. The *Sampson* court rejected the suggestion in *Yeates* (807 F.2d 874 (10th Cir. 1986)) that an unambiguous agreement normally controls the court's determination.

[26] *In re Sampson*, 997 F.2d at 721 ("Whether a debt is nondischargeable under § 523(a)(5) is a question of federal law."); *In re Rivet*, 2014 WL 1876285, at *3; *In re Trump*, 309 B.R. at 592; *In re Busch*, 369 B.R. 614, 622 (B.A.P. 10th Cir. 2007) (citing *In re Sampson*, 997 F.2d at 725–26).

[27] *In re Sampson*, 997 F.2d at 722 (citation omitted).

[28] *In re Sampson*, 997 F.2d at 723, quoting in the second statement 2 HOMER H. CLARK, JR., THE LAW OF DOMESTIC RELATIONS IN THE UNITED STATES § 17.7, at 305 (2d ed. 1987)

under the Code.[29]  "A 'spouse's need for support is a very important factor,' and 'the crucial issue is the function the award was intended to serve.'"[30]

To determine whether a debt is a DSO this Court considers the parties' shared intent at the time of the marital settlement agreement, the substance of the divorce obligation, whether the purpose and effect of the obligation is to provide support to a spouse, a spouse's need for support, and what function the obligation is intended to serve.[31]  If the divorce were litigated, as in the present case (as opposed to the state court adopting the parties' mutual marital settlement agreement), then it is the intent of the state court judge that is considered.[32]  The inquiry is whether the state court judge believed and found the debt was in fact support, or whether that debt was established by the state court as a means of fairly dividing the parties' assets and liabilities.[33]

---

(emphasis provided by the *Sampson* court).

[29] *In re Rivet*, 2014 WL 1876285, at *3.

[30] *In re Trump*, 309 B.R. at 593 (quoting *In re Yeates*, 807 F.2d at 879, and *In re Williams*, 703 F.2d 1055, 1057 (8th Cir. 1983)).

[31] *In re Sampson*, 997 F.2d at 726; *In re Yeates*, 807 F.2d at 879; *In re Williams*, 703 F.2d at 1057; *see also Taylor v. Taylor (In re Taylor)*, 737 F.3d 670, 676 (10th Cir. 2013) ("When determining whether an obligation is in the nature of alimony, maintenance, or support, this court conducts a 'dual inquiry' looking first to the intent of the parties at the time they entered into their agreement, and then to the substance of the obligation.").

[32] SOMMER & MCGARITY, *supra* note 22, ¶ 6.04[2], at 6-28 to 6-29.

[33] *Good v. Good (In re Good)*, 187 B.R. 337, 338–40 (Bankr. D. Kan. 1995).  As an aside, the analysis is difficult when the ex-spouse's obligation to pay joint debt not associated with the parties' former joint residence—such as joint credit card debt.  Whether the requirement that a debtor pay these debts and hold his ex-spouse harmless therefrom and indemnify her qualifies as

If a debt is not discharged, then the associated interest, both pre and post-bankruptcy, is likewise, not discharged.[34] Section 523(a) exceptions to discharge usually are strictly construed in favor of the debtor; however, that rule does not apply to DSOs.[35] The burden of proof to demonstrate nondischargeability is by a preponderance of the evidence and rests with the objecting creditor.[36] The burden for the objecting creditor is both to establish the existence of the underlying debt and to demonstrate that the debt is of a kind contemplated under an exception to discharge.[37]

### James's Obligation to Pay Maintenance to Ericka is a DSO

The first inquiry to determine whether James's obligation to Ericka is actually in the nature of alimony, maintenance, or support is the parties' intent.[38] Here, the Court examines the Divorce Decree for the intent of the Divorce Court because an agreement was not reached

---

a domestic support obligation or a division of debts is problematic. "No type of obligation is more difficult for the bankruptcy courts to analyze in determining dischargeability under section 523(a)(5) than a spouse's undertaking to pay joint marital debts or to hold the other spouse harmless from such debts." SOMMER & MCGARITY, *supra* note 22, ¶ 6.05[5], at 6-66. However, James's obligation under the Divorce Decree to pay joint debts assigned to him is not currently before the Court.

[34] *See Tuttle v. United States (In re Tuttle)*, 291 F.3d 1238, 1241 (10th Cir. 2002) (finding that the post-bankruptcy interest associated with a nondischargeable tax debt is not discharged).

[35] 4 COLLIER ON BANKRUPTCY, *supra* note 22, ¶ 523.05, at 523-1; *Jones v. Jones (In re Jones)*, 9 F.3d 878, 880 (10th Cir. 1993).

[36] *Grogan v. Garner*, 498 U.S. 279, 286–87 (1991).

[37] *See* SOMMER & MCGARITY, *supra* note 22, ¶¶ 6.07[4] and 6.07A[3][b], at 6-97 and 6-106, respectively.

[38] *In re Sampson*, 997 F. 2d 717.

- 10 -
14.12.29 Waller Order Granting Priority Status of DSO Claim.wpd

Case 14-06023   Doc# 25   Filed 12/29/14   Page 10 of 18

between James and Ericka in their state court divorce action.[39]  The Divorce Decree labels the obligation as "maintenance" and consistently refers to the obligation as maintenance throughout the decree.  Although the Court is not bound by the Divorce Decree's labels, the characterization assigned to the obligation "is persuasive evidence of intent."[40]  The label attached by the Divorce Court "is entitled to great weight."[41]  Furthermore, the Divorce Court did not reclassify the Maintenance when James filed a motion to reconsider and amend.[42]  The Divorce Court reiterated that Ericka stayed at home and raised the children and although James "said he was broke and cash poor, his lifestyle showed little diminution."[43]  Here, the Court finds the Divorce Court's use of the word maintenance and its refusal to reclassify the Maintenance persuasive that the Maintenance is a DSO.  The Divorce Court would have most likely avoided use of the word maintenance if in fact its sole purpose was to provide for a property division with monthly payments.  A separate section of the Divorce Decree addresses the property settlement between James and Ericka.  It is significant the Maintenance is paid in installments, the termination of which is triggered by events ordinarily associated with maintenance.  Under the facts of this

---

[39] SOMMER & MCGARITY, *supra* note 22, ¶ 6.04[2], at 6-29.

[40] *In re Sampson*, 997 F.2d at 723 (quoting *In re Yeates*, 807 F.2d at 878).  Here, the Divorce Decree's language is persuasive of intent because the parties were unable to reach their own agreement (SOMMER & MCGARITY, *supra* note 32, ¶ 6.04[2], at 6-28 to 6-29).

[41] 4 COLLIER ON BANKRUPTCY, *supra* note 22, ¶ 523.11[6][a], at 523-85.

[42] Doc 19-4.  James's motion to reconsider filed with the Divorce Court was not included in the parties's stipulated documents.  However, the Divorce Court's order denying the motion to reconsider in part and amending the journal entry was included.

[43] Doc. 19-4.

case, the use of the word maintenance and the separation of the Maintenance and property settlement sections are indicia of a DSO.

It could be argued that the Divorce Court's intent is somewhat unclear due to the statements that "[b]ased upon the division of financial accounts and assets outlined below, maintenance is ordered in the amount of $1,000 a month for 60 months"[44] and "in lieu of any value assigned to the businesses and their assets."[45] However, the Court does not consider these statements in a vacuum, but instead examines the Divorce Court's intent based on the entirety of the Divorce Decree. Here, the question is how the substance and function of the Maintenance operates under federal law. The Court "must attempt to infer an intent by examining the underlying facts of the case."[46]

Here, to determine whether the Maintenance is a DSO, the Court addresses the second prong of the *Sampson*[47] analysis—the substance of the obligation. Determining whether James's obligation is in the nature of support turns on "the function served by the obligation at the time of the divorce."[48] The function the obligation serves is examined by "considering the relative

---

[44] Doc. 19-3 ¶ 4, at 7.

[45] Doc. 19-3 ¶ 13, at 8.

[46] SOMMER & MCGARITY, *supra* note 22, ¶ 6.04[2], at 6-29 (2014).

[47] *In re Sampson*, 997 F.2d 717.

[48] *In re Sampson*, 997 F.2d at 725–26 (quoting *In re Gianakas*, 917 F.2d 759, 763 (3d Cir. 1990).

- 12 -
14.12.29 Waller Order Granting Priority Status of DSO Claim.wpd

financial circumstances of the parties at the time of the divorce."[49] Courts examine the following factors: (a) the income and needs of the parties at the time the obligation becomes fixed; (b) the amount and outcome of property division; (c) whether the obligation terminates upon the obligee's death, remarriage, or emancipation of children; (d) the number and frequency of payments; (e) the waiver of alimony or support rights; (f) the availability of state court procedures to modify the obligation or enforce through contempt of court order; (g) the tax treatment of the obligation; and (h) the current circumstances of the parties at the time of the dischargeability proceeding when analyzing whether the substance of the obligation is in the nature of support.[50] Here, the *Sampson* factors indicate that the Maintenance is in the nature of support because that was the intent of the Divorce Court and the substance of the payments are based on Ericka's need and provide post-divorce support for Ericka.

James and Ericka's child support worksheet lists James's proportionate share of the combined marital income as 75.8 percent and Ericka's as 24.2 percent.[51] James admitted that Ericka relied on his income for basic needs when he said Ericka "use[d] me as a meal ticket for over 8 years."[52] Ericka relied on James's access to his business's petty cash fund to pay for "personal items such as clothing and family meals at restaurants."[53] While married, Ericka also

---

[49] *In re Sampson*, 997 F.2d at 726.

[50] SOMMER & MCGARITY, *supra* note 22, ¶ 6.04[4]–6.04[11], at 6-33 to 6-55.

[51] Doc. 19-1 ¶ D.2, at 6.

[52] Doc. 19-3, at 2.

[53] Doc. 19-3 ¶ 8, at 4.

received "$24,000 annually [from James's] company for undisclosed work."[54] Both James and Ericka "benefited from a number of personal expenses paid for by [James's] company, including property and vehicle insurance, personal property taxes, cell phones, satellite TV, internet, health insurance, and travel."[55] Ericka was the beneficiary of this arrangement because "[d]uring most of the marriage, [Ericka] ran the household and reared the children, while [James] traveled the country on business."[56] Ericka currently works two jobs bringing in $27,300 annually.[57] Furthermore, James received all the business-related assets that generated most of the income received by Ericka during the marriage. In arriving at its conclusion, the Divorce Court considered "the length of this marriage, the age of the parties, the property they own, their present and future earning capacities, and the time, source and manner of acquisition of their property."[58] These findings indicate Ericka relied on family support from James's income from the business assets assigned to James. At the time of the divorce, Ericka was in need of support in the form of maintenance.

The Divorce Court separately ordered James to pay monthly child support. However, the *Goin* court recognized that a separate child support award was insufficient "to provide the spouse

---

[54] Doc. 19-3 ¶ 6, at 3.

[55] Doc. 19-3 ¶ 7, at 3.

[56] Doc. 19-3 ¶ 1, at 2.

[57] Doc. 19-1, at 6. Ericka's $24,000 annual salary from James's companies terminated when James and Ericka divorced.

[58] Doc. 19-3, at 9.

and children with the standard of living to which they had grown accustomed," and relied on that fact in finding that the [maintenance] obligation was in the nature of support.[59] Furthermore, following the issuance of its Divorce Decree, the Divorce Court was asked to modify its child support order due to James's failure to pay the Maintenance. The Divorce Court's initial October 17, 2011, child support order required James to pay $597 a month and was based on James paying $1,000 a month in maintenance to Ericka.[60] On May 3, 2013, the Divorce Court found James in arrears on the Maintenance and increased his child support obligation to $692 a month.[61] This indicates Maintenance was intended as a DSO, because the Divorce Court had to increase child support payments to provide necessary support for Ericka—offsetting James's failure to pay the Maintenance. If the Maintenance were actually a property settlement and not a DSO, then James's failure to pay Maintenance would not change the child support calculus.

Ericka is scheduled to receive the Maintenance in monthly increments over the course of 60 months.[62] It is notable that the Divorce Court awarded monthly maintenance, and not a distributive award payable over a term period. The Maintenance also "terminate[s] upon the death of either party, [Ericka's] remarriage or her cohabitation in a marriage-like relationship

---

[59] *In re Goin*, 808 F.2d 1391, 1393 (10th Cir. 1987).

[60] Doc. 19-5 ¶¶ 1 and 5, at 1–2.

[61] Doc. 19-5 ¶ 10, at 4.

[62] 4 COLLIER ON BANKRUPTCY, *supra* note 22, ¶ 523.11[6][e], at 523-87. An obligation paid as a lump sum is more likely a property settlement while an obligation to make regular monthly payments is more characteristic of support.

with an adult."[63] James also received $2,800,784.33 in assets encumbered by $2,179,335.80 in debt.[64] Despite the encumbrance: (a) these assets are income-generating; and (b) James received $621,448.53 in income-generating assets in excess of debt. Comparatively, Ericka received $23,316.67 in debt-free marital assets. Thus, James received $598,131.86 more than Ericka in marital estate property. It is this Court's conclusion that the Maintenance is a DSO and is not dischargeable under §§ 523(a)(5) and 1328(a)(2).

## Attorney's Fees

Ericka seeks a determination that attorney's fees and costs of $4,250.00 awarded to her in the Divorce Decree are a DSO. As discussed, *Sampson*[65] states the general rule with regard to dischargeability of obligations arising from divorce actions under § 523(a)(5). The Tenth Circuit Court of Appeals narrowed the creditor's burden when the obligations are directly linked to custody proceedings.[66] However, "not all fees awarded in a divorce arise in conjunction with or are directly related to custody or the best interest of the child."[67] As discussed in *Turner*,

---

[63] Doc. 19-3, ¶ 13, at 8; 4 COLLIER ON BANKRUPTCY, *supra* note 22, ¶ 523.11, at 523-87. An obligation terminating on death, remarriage, or emancipation of the parties' children is likely support.

[64] Doc. 19-8, at 5–6, *supra* note 12.

[65] *In re Sampson*, 997 F.2d 717.

[66] *In re Jones*, 9 F.3d 878 (holding that attorneys' fees incurred and awarded in custody matters are by their nature related to the best interests of the child and are therefore in the "nature of support" under 11 U.S.C. § 523(a)(5)).

[67] *In re Turner*, 266 B.R. 491, 497 (B.A.P. 10th Cir. 2001).

attorney's fees may be "awarded without reference to any particular issue or controversy."[68]  In the instant case, where the child custody factors in *Jones*[69] are not present, the *Sampson* test applies.

The Divorce Court indicated that the attorney's fee award covered discovery costs.[70]  Based on this language, the Court finds that the Divorce Court's attorney's fees and costs award was not intended for Ericka's support, but to punish James for his lack of candor and recalcitrance.  Because the award was intended as punishment and is not in the nature of support, Ericka's claim for $4,205 in attorney's fees and costs is not a DSO.

## Conclusion

James's obligation to pay the Maintenance is a DSO under § 101(14A) and is nondischargeable under §§ 523(a)(5) and 1328(a)(2).  Ericka failed to prove that the award of attorney's fees and costs award is in the nature of support.  James's obligation to pay $4,205 in attorney's fees and costs is not a DSO and is a debt under § 523(a)(15); accordingly, the

---

[68] *In re Turner*, 266 B.R. at 497.

[69] *In re Jones*, 9 F.3d 878.  Awards directly linked to child custody or to matters involving the best interest of the child are ordinarily in the nature of support.

[70] Doc. 19-3 ¶ 14, at 9.  "[James] never provided copies of many financial records to [Ericka] or to the Court. Moreover, he refused to provide some of the partial records that he ultimately provided without a court order. [James] appeared at each court hearing . . . with more records than previously produced, even though he still fell short of reasonable requests and pleaded shoddy bookkeeping.  Hence, it is reasonable to assess some cost of discovery in the case to him. . . . The Court awards attorney fees of $3,300.00 (12 x $275/hr.), and bank fees of $950.  The accounting fees were necessary at some point for case preparation. . . . Some of the claimed costs were part of the normal give and take of discovery, and some review of produced documents was necessary to the case.  However, [James] flouted the rules repeatedly and must bear some of the costs of making him comply."

attorney's fees and costs award is not excepted from a full compliance chapter 13 discharge under § 1328(a).

IT IS ORDERED that each party shall bear his or her costs in this action pursuant to Fed. R. Bankr. P. 7054(b).

IT IS FURTHER ORDERED that the foregoing constitute Findings of Fact and Conclusions of Law under Fed. R. Bankr. P. 7052 and Fed. R. Civ. P. 52(a). A judgment on this ruling will be entered on a separate document as required by Fed. R. Bankr. P. 7058 and Fed. R. Civ. P. 58.

**IT IS SO ORDERED**

###

ROBERT D. BERGER
U.S. BANKRUPTCY JUDGE
DISTRICT OF KANSAS